HONORABLE PAUL A. CROTTY, United States District Judge
This action is about an undocumented immigrant who has been detained by Immigration and Customs Enforcement ("ICE") pending deportation, Petitioner, Pablo Antonio Villavicencio Calderon, unlawfully entered the United States in 2008. Subsequently, at an immigration proceeding in March 2010, he agreed to voluntarily depart the country by July 15, 2010. But Petitioner overstayed his welcome. Petitioner has continued to reside in this country, and as a result, the order of voluntary departure has been converted into a final order of removal.
Although he stayed in the United States unlawfully and is currently subject to a *950 final order of removal, he has otherwise been a model citizen. Petitioner married Ms. Sandra Milena Carmona Chica, a United States citizen. He now has two children, both of whom are United States citizens. He has no criminal history. He has paid his taxes. And he has worked diligently to provide for his family.
Petitioner seeks to continue contributing to his family and community, and to that end, he commenced the process of regularizing his immigration status to become a lawful permanent resident. Specifically, he commenced the process of obtaining a provisional unlawful presence waiver, which is an initial step toward immigration status adjustment. In February 2018, Ms. Chica filed, on Petitioner's behalf, with the U.S. Citizenship and Immigration Services ("USCIS"), a petition for alien relative ("Form I-130"). requesting that USCIS recognize Petitioner as Ms. Chica's spouse. USCIS, an agency within the U.S. Department of Homeland Security (the "DHS"), is currently processing the I-130 petition, and has scheduled an interview for Petitioner. Once Form I-130 is approved, Petitioner plans to apply for permission to reapply for admission into the United States ("Form I-212") and, subsequently, for a provisional unlawful presence waiver ("Form I-601A"), as outlined in regulations promulgated by the DHS. See infra , pp. 956-57.
The prospect of regularizing his immigration status was set back when, on June 1, 2018, while making a pizza delivery at Fort Hamilton in Bay Ridge, Brooklyn, base security found that Petitioner had an outstanding warrant of deportation. He was held by base security until he was turned over to ICE, a law enforcement agency within the DHS, and since then, he has been detained by ICE at the Hudson County Correctional Facility in Kearny, New Jersey. ICE seeks to remove Petitioner to his country of origin, Ecuador.
On Saturday, June 9, 2018, Petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, requesting the Court to order Jefferson B. Sessions III, Kirstjen Nielsen, Thomas Decker, and the DHS ("Respondents")[1] to: (1) release him from custody; (2) enjoin Respondents from removing him from the New York City area; and (3) stay his removal from the United States pending resolution of this petition. ECF 1. Petitioner asserts five claims, including that his present detention and impending removal violate the Administrative Procedure Act ("APA") and the Fifth Amendment.
Judge Nathan, sitting as the Part I judge, enjoined Respondents from transferring Petitioner from the New York City area and from transferring the Petitioner from the jurisdiction of the New York Field Office of the Office of Enforcement and Removal operations. She set July 20, 2018 as the hearing date, which was later adjourned to July 24, 2018. On that day, the Court heard oral argument from both parties and considered their arguments and submissions. The Court granted the petition for a writ of habeas corpus and Petitioner was immediately released.[2] This *951 opinion explains why the petition was granted.
It should not be difficult to discern that families should be kept together rather than be separated by the thoughtless and cruel application of a so called "zero tolerance" policy. This is especially so where the organization seeking removal has also provided a pathway for a person in Petitioner's position to regularize his immigration status with minimal disruption to his family life. Petitioner should be allowed to pursue the pathway. He deserves it due to his hard work, his dedication to the family, and his clean criminal record, Rather than provide him with this opportunity, however, Respondents inexplicably want to remove him. There is no justification for this mercurial exercise of executive power. Justice demands that Petitioner be accorded an opportunity to pursue the relief the law allows. Anything less would violate the APA and the U.S. Constitution. So long as Petitioner is pursuing the relief the law allows, he may not be removed.
DISCUSSION
Petitioner seeks an order releasing him from custody and staying his removal until he exhausts his right to pursue a provisional unlawful presence waiver, an initial step towards his immigrant status regularization. Petitioner contends that his detention and impending removal violate his due process right and the APA because the detention and the impending removal interfere with his opportunity to seek the waiver. Petitioner seeks a fair opportunity to engage in the immigration process that the DHS itself has promulgated for someone in his precise position.
Respondents oppose this sensible request for relief. Respondents contend that the Southern District of New York is not proper venue for the instant petition; and even if it were, the Court lacks jurisdiction to review the Petitioner's claims. Respondents also challenge the merits of the claims.
For the reasons set forth below, the Respondents' arguments are rejected, and the petition is granted.
I. Venue
"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.' " Rasul v. Bush , 542 U.S. 466, 473, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004) (quoting 28 U.S.C. §§ 2241(a), (c)(3) ). "The question whether the [Court] has jurisdiction over [a] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does the [Court] have jurisdiction over him or her?" Rumsfeld v. Padilla , 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).
A. Petitioner has Named Proper Respondents.
The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. Generally, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official," Padilla , 542 U.S. at 435, 124 S.Ct. 2711, but not in the immigration context. In the immigration context, it may be said that the "immediate custodian" rule does not control, and its applicability depends on whether the petitioner challenges the present physical detention (i.e. , a "core" habeas challenge) or other statutory or constitutional violations (i.e. , a "non-core" habeas challenge).[3]
*952 For a non-core habeas challenge, courts in this circuit have consistently held that the proper respondent is a person or entity that has legal custody of the petitioner, also known as a "legal custodian." See Garcia-Rivas v. Ashcroft , 2004 WL 1534156, at *1 (S.D.N.Y. 2004) ; Batista-Taveras v. Ashcroft , 2004 WL 2149095, at *2 (S.D.N.Y. 2004) ; Somir v. United States , 354 F.Supp.2d 215, 217-19 (E.D.N.Y. 2005).
For a core habeas challenge, however, courts are divided. "[A] 'clear majority' of courts in this circuit have held that the 'immediate custodian' rule applies" even in the immigration context. Singh v. Holder , 2012 WL 5878677, at *2 (S.D.N.Y. 2012) (quoting Zhen Yi Guo v. Napolitano , 2009 WL 2840400, at *3 (S.D.N.Y. 2009) ).[4] But its application has not been universal. See Farez-Espinoza v. Chertoff , 600 F.Supp.2d 488 (S.D.N.Y. 2009) ; Reyes-Cardenas v. Gonzales , 2007 WL 1290141 (S.D.N.Y. 2007).
Here, Petitioner brings both core habeas challenges (First and Second Causes of Action) and non-core habeas challenges (Third, Fourth, and Fifth Causes of Action), and asks the Court to apply the legal custodian rule to both types of challenges. Petitioner, in effect, asks the Court to depart from the clear majority rule for core challenges and conclude that the proper respondents here are the legal custodians regardless of the type of challenge.
The Court agrees with Petitioner. "[T]he appropriate respondent in a habeas suit[ ] depends primarily on who has power over the petitioner and ... on the convenience of the parties and the court." Henderson , 157 F.3d at 122, "[T]he convenience of the parties and the court" disfavors selectively applying the immediate custodian rule for core challenges. Id. Since the non-core challenges predominate, it simply makes no sense to apply the legal custodian rule to the non-core challenges and the immediate custodian rule to the core challenges, and then litigate in separate venues. In these circumstances, "the convenience of the parties and the court" favors applying the same custodian rule to both the core challenges and non-core challenges,[5] id. , and because the predominant non-core challenges clearly belong to legal custodians, the core challenges go along, as well.
It is also clear that the power over Petitioner is vested in legal custodians, which, again, favors application of the legal custodian rule. First , the detention facility here is merely providing service to ICE, pursuant to an Inter-Governmental Service Agreement ("IGSA"). That agreement provides that detainees can be released and discharged only from and to properly identified ICE personnel. Detainees cannot be released without the express authorization of ICE; ICE, and only ICE, may authorize release of any detainee. ICE is in complete control of detainees' admission and release. With due respect to the warden of the Hudson County Correctional Facility, the IGSA places the warden in the role of a mere functionary.
*953 Second , the warden cannot respond to merits of the claims underlying the habeas petition. The warden simply does not have any information to answer for federal authorities, nor does the warden have any reason to litigate these claims here. "[F]or the great majority of habeas cases, which involve prisoners held in penal institutions, the [immediate custodian] rule made sense, and still does." Id. at 122. But when the warden of the detention facility has no literal power to produce the petitioner, and cannot provide meaningful answers to important factual and legal questions, there is no reason to apply the immediate custodian rule.
Third , the Court notes ICE's tendency to detain aliens in remote custodial facilities and then insist on applying the immediate custodian rule. Id. at 125. For example, children separated from their parents at the Mexican border are transported to New York where they are held. The Court does not believe that this is accidental or random.[6] Rather, the Court believes ICE may be attempting to take advantage of the immediate custodian rule to frustrate detainees' connections to their support system of families and friends; retention of competent immigration counsel; and effective participation in the proceedings. This is not an appropriate for application of the immediate custodian rule.
This Court is not the first to conclude that legal custodians are proper respondents under appropriate circumstances. As Henderson noted, "the rules treating the immediate custodian as the only proper respondent and that person's situs as the sole correct venue have not been applied consistently or in a rigid fashion." Id. at 124. The Supreme Court took a "flexible approach" in several habeas cases to hold that a legal custodian was a proper respondent "for the limited purposes of habeas corpus jurisdiction." Id. at 125 (quoting Strait v. Laird , 406 U.S. 341, 346, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972) ). Other courts in this district have also followed a similar flexible approach. See Farez-Espinoza , 600 F.Supp.2d 488 ; Reyes-Cardenas , 2007 WL 1290141.
Accordingly, the Court concludes that in the immigration context, when a petitioner is detained in a local facility pursuant to an IGSA with a federal agency; and the immediate custodian must seek the agency's authorization for admission or release of detainees; and further has neither knowledge nor interest in key questions, then legal custodians are proper respondents to both core and non-core challenges. Under this rule, the named respondents, who are legal custodians of Petitioner, are proper respondents to this petition.[7]
*954 B. The Court has Jurisdiction over Petition.
"[A] district court acts within its respective jurisdiction within the meaning of § 2241 as long as the custodian can be reached by service of process." Rasul v. Bush , 542 U.S. 466, 478-79, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004) (internal modifications omitted). Thus, as long as Respondents can be reached by service of process under the New York law, this Court has jurisdiction. See Fed. R. Civ. P. § 4(e)(1).
None of the Respondents dispute that they are reachable by service of process under the New York law. Mr. Decker's office is located in New York, subjecting him to service of process. Mr. Sessions, Ms. Nielsen, and the DHS can all be reached by service of process. See N.Y.C.P.L.R. §§ 302(a)(1), 313. Accordingly, the named Respondents are subject to this Court's jurisdiction, and the Court has jurisdiction over this habeas petition.
II. Subject Matter Jurisdiction
Before reaching the merits of Petitioner's claims, the Court must consider whether it has jurisdiction to adjudicate Petitioner's challenges. Respondents contend that 8 U.S.C. § 1252 strips the Court of jurisdiction.
The Court disagrees. Petitioner seeks a judicial determination that: (1) he has a right to seek a provisional unlawful presence waiver; and (2) given that right, his detention and impending removal, notwithstanding such right, with no justification or explanation, violates his constitutional right and the APA. The Court has jurisdiction to review these limited issues.
A. 8 U.S.C. § 1252(g) Does Not Preclude Judicial Review.
Respondents contend that the Court lacks jurisdiction to review Petitioner's claims because 8 U.S.C. § 1252(g)[8] strips the Court of its jurisdiction. The jurisdictional bar of Section 1252(g) applies only to ICE's discretionary decisions in three enumerated categories ("commence proceedings, adjudicate cases, or execute removal orders"). See Reno v. Am.-Arab Anti-Discrimination Comm. , 525 U.S. 471, 482-83, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). This section "does not bar all claims relating in any way to deportation proceedings," but rather serves to bar attempts to impose judicial constraints upon prosecutorial discretion pertaining to the three enumerated, discrete decisions. Kwai Fun Wong v. United States INS , 373 F.3d 952, 964 (9fh Cir. 2004).
Petitioner here does not challenge ICE's prosecutorial discretion. Rather, Petitioner challenges ICE's legal authority to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS. The Court's review of ICE's legal authority is not foreclosed by 8 U.S.C. § 1252(g). See e.g., Zadvydas v. Davis , 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (reviewing whether ICE has the statutory authority to detain an immigrant subject to a final removal order after the 90-day removal period).
Respondents' reliance on Ragbir v. Homan is misplaced. 2018 WL 2338792 (S.D.N.Y. 2018). In Ragbir , the petitioner asked the court to consider whether ICE had unconstitutionally decided to execute the order of removal against the petitioner *955 on the basis of his protected speech. Judge Castel held that the court did not have subject matter jurisdiction to consider that question because the decision to remove the petitioner was a discretionary one, and Section 1252(g) strips the court's jurisdiction to review a challenge to a discretionary decision. Id. at *3. Ragbir's challenge to "the decision to execute the [removal] order" is fundamentally different from this Petitioner's challenge to ICE's legal authority. The review of the ICE's legal authority simply does not entail review of ICE's discretionary decision.
B. 8 U.S.C. §§ 1252(a)(5), (b)(9) Do Not Strip District Court's Jurisdiction.
Respondents also contend that under 8 U.S.C. §§ 1252(a)(5),[9] (b)(9),[10] the Court lacks jurisdiction to review Petitioner's claims because jurisdiction to review questions arising from a removal proceeding is vested in an appropriate court of appeals.
Sections 1252(a)(5) and (b)(9), however, do not strip the Court of its jurisdiction. These sections have been interpreted to strip federal district courts of jurisdiction to review either a "direct" or "indirect challenge" to an order of removal. Delgado v. Quarantillo , 643 F.3d 52, 55 (2d Cir. 2011). But Petitioner's claims are neither direct nor indirect challenges to his order of removal. Petitioner concedes that the order of removal against him is valid and enforceable, and that, absent his right to seek a provisional waiver, Petitioner would be removed pursuant to his order of removal. See 6/9/2018 Tr. at 6:20-21 ("In this particular case, your Honor, we are not challenging the underlying order of removal."). He also concedes that he would be removed if he fails to obtain a provisional waiver:
THE COURT : Mr. Forbes, let me ask you, what if that process did not yield the result that you are seeking? There is no guarantee that it will issue the result that you want, right?
MR. FORBES [Petitioner's attorney] : That's absolutely correct. And we are not asking for-
THE COURT : Then, if it fails, the petitioner will be removed, correct?
MR. FORBES : That's correct, your Honor.
7/24/2018 Tr. at 18:2-10. Petitioner merely asks the Court to review whether ICE has the legal authority to remove Petitioner pursuant to an admittedly valid order of removal without affording him the opportunity to first engage in an immigration process that the DHS itself made available to people like him. That is not a challenge to the removal order.
The Court's conclusion is not inconsistent with Delgado . The plaintiff in Delgado sought "to force an adjudication on the merits of" an I-212 application that had been previously denied on a procedural ground, and the Second Circuit held that *956 such a claim was an indirect challenge to an order of removal. Delgado , 643 F.3d at 55. But the plaintiff's claim in Delgado was fundamentally different from the Petitioner's claim here. The plaintiff's claim in Delgado was premised on more than a right to seek access to a lawful regulatory process; it was premised on a right to remain in the United States, that if USCIS were to reach the merits of her I-212 application, she would be granted the right to remain in the United States. That is not what Petitioner claims here. Petitioner claims only that he has a right to seek access to a lawful regulatory process that the DHS makes available to people in his precise position, and seeks review of ICE's legal authority in executing an order of removal notwithstanding his right. Looked at another way, Petitioner seeks consideration of his legitimate and authorized pursuit of an existing process before the government exercises its right to remove. That is not a claim of a right to remain in the United States. That is neither a direct nor indirect challenge to his removal order.[11]
Accordingly, the Court holds that Sections 1252(a)(5) and (b)(9) do not strip the Court's jurisdiction over the Petitioner's claims.
III. Violation of APA and Fifth Amendment of U.S. Constitution
Both the APA and the Fifth Amendment of the U.S. Constitution protect persons from an arbitrary governmental interference with the persons' rights and liberty. When a government agency makes available an immigration process to a class of persons but then deprive a member of the class a fair opportunity to engage in the process, with no explanation or justification, that is an arbitrary governmental interference. It is not unlike giving a person a job, and then taking away the tools necessary to perform the job. It is simply not right.
The Court concludes that Petitioner has a right to engage in DHS's process for obtaining a provisional unlawful presence waiver. That process completely covers the situation in which Petitioner finds himself. The Court further concludes that the execution of an outstanding removal order without any explanation or justification, in preference to Petitioner's right to seek a provisional unlawful presence waiver, is arbitrary and unjustified, in violation of the APA and the Fifth Amendment.
A. Petitioner has Right to Engage in Immigration Process Made Available to Him.
i.Process for Obtaining Provisional Unlawful Presence Waiver
An alien who is not eligible to adjust his or her status in the United States must obtain an immigrant visa abroad, But if an alien travels abroad to obtain an immigrant visa while a final order of removal is pending against the alien, the alien may not return to the United States for up to 10 years even with a subsequently-issued valid immigrant visa unless the alien was previously granted an *957 unlawful presence waiver of inadmissibility.
Typically, an alien cannot apply for a waiver of inadmissibility until after immigrant visa interviews are held abroad. But in 2013 and 2016, the DHS promulgated detailed regulations that permit certain individuals who are present in the United States to request from USCIS a provisional waiver of inadmissibility before departing the United States for consular processing of their immigrant visas. See Expansion of Provisional Unlawful Presence Waivers of Inadmissibility; Final Rule , 81 Fed. Reg. 50244, 50245 (My 29, 2016) ; Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives; Final Rule , 78 Fed. Reg. 535, 536 (January 3, 2013). "This new process was developed to shorten the time that U.S. citizens and lawful permanent resident family members are separated from their relatives while those relatives are obtaining immigrant visas to become lawful permanent residents of the United States."[12] The provisional waiver is available to an alien who can demonstrate that the alien has no criminal record and is married to a United States citizen who would suffer without the alien's support in the United States. An outstanding final order of removal does not render an otherwise eligible alien ineligible, as long as "the alien has already filed and USCIS has already granted ... an application for consent to reapply for admission under section 212(a)(9)(A)(iii) of the Act and 8 CFR 212.2(j)." 8 C.F.R. § 212.7(e)(4)(iv).
DHS's regulations permit an eligible alien to obtain a provisional waiver in three steps. First , the alien's U.S. citizen relative (e.g. , a spouse) files a Form I-130 "Petition for Alien Relative" to request that the Government recognize the alien as the citizen's immediate relative. See 8 U.S.C. § 1154(a)(l)(A)(i). Second , the alien files a Form I-212 "Application for Permission to Reapply for Admission" to request permission to reapply for admission into the United States. Third , the alien files a Form I-601A "Application for Provisional Unlawful Presence Waiver" to request the provisional waiver of inadmissibility. An alien is granted a provisional waiver only if each of the forms are approved.[13]
ii.Petitioner has Right to Apply for Provisional Unlawful Presence Waiver.
When a government agency promulgates "[r]egulations with the force and effect of law," they supplement the bare bones" of federal statutes; the government agency must follow its own "existing valid regulations." United States ex rel. Accardi v. Shaughnessy , 347 U.S. 260, 266, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954). The Accardi doctrine applies with particular force when "the rights of individuals are affected." Morton v. Ruiz , 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). Accordingly, under Accardi , when the Government promulgates a regulatory process for obtaining relief, a "right to seek relief is created, even when there is no "right to the relief itself." Arevalo v. Ashcroft , 344 F.3d 1, 15 (1st Cir. 2003) (citing Accardi , 347 U.S. at 268, 74 S.Ct. 499 ).
Here, the DHS has promulgated, through a notice and comment process, detailed regulations that make available a *958 process for obtaining a provisional unlawful presence waiver of inadmissibility to aliens with outstanding final orders of removal. These regulations create a "right to seek" the provisional waiver even when there is no "right to the [waiver] itself." Id. Accordingly, the Court concludes that Petitioner has a right to apply for a provisional unlawful presence waiver.
B. Respondents have Violated the APA and the Fifth Amendment.
The Court concludes that Respondents have violated the APA and the Petitioner's due process right by executing the Petitioner's order of removal with no explanation or justification notwithstanding the Petitioner's right to apply for a provisional waiver.
i.APA Violation
Under the APA, a court may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, by detaining and attempting to execute Petitioner's order of removal, Respondents have attempted to strip the Petitioner's right to engage in an immigration process made available to him. Yet Respondents have provided no explanation or justification.
Respondents' attempted execution of an outstanding removal order, notwithstanding Petitioner's right to apply for the provisional waiver, is "not in accordance with law." 5 U.S.C. § 706(2)(A). Petitioner is not asserting a right to a provisional waiver; he is merely claiming "a right to try," Reply Mem. 21. The Court sees no reasoned justification for Respondents' actions, nor could Respondents provide any. See 7/24/2018 Tr. at 31:11-24. Instead, Respondents contend, quite erroneously, that they can wield unreviewable power to remove aliens, creating a family separation of up to 10 years, even though the DHS itself has granted a right to seek a provisional waiver that would alleviate substantial hardship. Respondents show no concern for the rights of aliens that they themselves created. This unchecked exercise of power is exactly what the APA is designed to protect against. The Court therefore concludes that the Respondents have violated the APA by attempting to execute, with no explanation or justification, an outstanding order of removal against Petitioner that would, in effect, strip the Petitioner's right to seek a provisional waiver.
ii.Due Process Clause Violation
The Court reaches a similar conclusion under the Due Process Clause of the Fifth Amendment of the Constitution. The Due Process Clause requires that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. The Due Process Clause has been interpreted as a "protection of the individual against arbitrary action of government," County of Sacramento v. Lewis , 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), which has both a procedural component protecting against the "denial of fundamental procedural fairness," id. at 845-46, 118 S.Ct. 1708, as well as a substantive component guarding the individual against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective," id. at 846, 118 S.Ct. 1708. The Supreme Court has unequivocally stated that the due process right under the Fifth Amendment extends to aliens in removal proceedings. Reno v. Flores , 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). As discussed above, Respondents have attempted to strip the Petitioner's right with no *959 explanation or justification. That is a violation of due process. See Sameena, Inc. v. U.S. Air Force , 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations ... may result in a violation of an individual's constitutional right to due process.").
The Court concludes that Respondents have violated the APA and the Due Process Clause of the Fifth Amendment. Accordingly, the petition for a writ of habeas corpus is GRANTED .
IV. Relief
The Court ORDERS Respondents to stay removal of Petitioner from the United States until Petitioner exhausts his right to seek a Provisional Unlawful Presence Waiver. Specifically, the Court orders Respondents to stay removal of Petitioner until the occurrence of one of the following events:
(1) Denial of Petition for Alien Relative on his behalf ("Form I-130");
(2) Denial of his Application for Permission to Reapply for Admission ("Form I-212");
(3) Denial of his Application for Provisional Unlawful Presence Waiver ("Form I-601A"); or
(4) Approval of Forms I-130, I-212, and I-601A.
The Court further ORDERS Respondents to release Petitioner from custody while the stay of removal is in force. The Supreme Court has made it clear that, although the INA permits detention for a "period reasonably necessary to secure removal" beyond the statutorily authorized 90 days, "if removal is not reasonably foreseeable," the continued detention is unreasonable and no longer authorized by the INA. Zadvydas , 533 U.S. at 699-700, 121 S.Ct. 2491.
To be clear, Respondents cannot subject Petitioner to an Order of Supervised Release while the release order is in force. Respondents contend that ICE's supervision would not contravene the Court's order and that the supervision is authorized by the INA. ECF 25. The Court disagrees. First , the Order of Supervised Release by ICE would be in conflict with the Court's order to release Petitioner from custody. "Custody" in the context of a federal habeas statute includes supervised release. See Scanio v. United States , 37 F.3d 858, 860 (2d Cir. 1994). Accordingly, ICE's Order of Supervised Release would be in conflict with the Court's release order. Respondents do not have any authority to modify this Court's order. Second , contrary to the Respondents' claim, the INA does not authorized supervision here. The INA authorizes supervision only when the alien subject to a final order of removal is "pending removal." See 8 U.S.C. § 1231(a)(3) ("the alien, pending removal , shall be subject to supervision under regulations prescribed by the Attorney General." (emphasis added) ). Here, the removal of Petitioner has been stayed, see supra p. 959, and thus the removal is no longer "pending." Id. Accordingly, Respondents do not have any supervision authority.
CONCLUSION
For the foregoing reasons, the Court grants the petition for a writ of habeas corpus. The Court concludes that Respondents have attempted to strip the Petitioner's right to seek a provisional waiver with no explanation or justification. That is a violation of the APA and the Petitioner's due process right. Accordingly, the Court orders Respondents to stay removal of Petitioner from the United States until Petitioner exhausts his right to seek a Provisional Unlawful Presence Waiver. Specifically, the Court orders Respondents to stay removal of Petitioner until the occurrence of one of the following events:
*960 (1) Denial of Petition for Alien Relative on his behalf ("Form I-130");
(2) Denial of his Application for Permission to Reapply for Admission ("Form I-212");
(3) Denial of his Application for Provisional Unlawful Presence Waiver ("Form I-601A"); or
(4) Approval of Forms I-130, I-212, and I-601A.
The Court further orders Respondents to immediately release Petitioner from custody while the stay of removal is in force because removal is no longer reasonably foreseeable. Petitioner shall not be subject to ICE's supervision while the release order is in force.
SO ORDERED.

Respondent Jefferson B. Sessions III is named in his official capacity as the Attorney General of the United States (the "Attorney General"). Respondent Kirstjen Nielsen is named in her official capacity as Secretary of Homeland Security in the DHS (the "Secretary"). Respondent Thomas Decker is named in his official capacity as the Field Office Director of the New York Field Office for ICE within the DHS (the "Director").

Before his release, Petitioner was directed to sign an Order of Supervised Release. Respondents claim that the Order of Supervised Release is not in conflict with the Court's order and seek the Court's approval for the supervised release. ECF 25. The Court disagrees. Petitioner shall not be subject to supervised release while the stay of removal is in force. See infra , pp. 959-60.

The Supreme Court and the Second Circuit has declined to decide whether the immediate custodian rule governs immigration cases. Padilla , 542 U.S. at 435 n. 8, 124 S.Ct. 2711 ; Henderson v. INS , 157 F.3d 106, 128 (2d Cir. 1998).

See also Fortune v. Lynch , 2016 WL 1162332 (S.D.N.Y. 2016) ; Adikov v. Mechkowski , 2016 WL 3926469 (S.D.N.Y. 2016) ; Concepcion v. Aviles , 2015 WL 7766228 (S.D.N.Y. 2015) ; Phrance v. Johnson , 2014 WL 6807590 (S.D.N.Y. 2014) ; Santana v. Muller , 2012 WL 951768 (S.D.N.Y. 2012).

Respondents concede that they frequently handle habeas corpus petitions involving detainees at the Hudson County facility in the Southern District of New York. See 07/24/2018 Tr. 13:7-15.

This behavior calls to mind that one of the grievances, cited by Jefferson in the Declaration of Independence, was the trial of colonists in "remote locations," Declaration of Independence (U.S. 1776) ("For transporting us beyond Seas to be tried for pretended offences."). Immigration was even then a critical issue; and Jefferson also complained of the Crown's "obstructing the Laws for Naturalization of Foreigners; refusing to pass others to encourage their migrations hither ..." Id.

Even if the immediate custodian rule were to govern core habeas challenges, venue would still have been proper here because objection to venue has been compromised. At least some of the Petitioner's claims are non-core habeas challenges (e.g. , Counts III, IV, and V), and proper respondents for such non-core habeas challenges are legal custodians. Seesupra p. 951-52. Accordingly, at least for the non-core habeas challenges, venue is proper in this district. Further, Respondents did not disagree that core and non-core habeas challenges should be reviewed together by one court. 7/24/2018 Tr. at 38:17-39:6. Accordingly, even if the immediate custodian rule ought to apply to core habeas challenges, objection to venue with respect to core habeas challenges (Counts I, II) has been compromised.

Section 1252(g) provides "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

Section 1252(a)(5) provides: "Notwithstanding any other provision of law (statutory or nonstatutory), ... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."

Section 1252(b)(9) provides: "With respect to review of a final order of removal under subsection (a)(1), ... [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction ... to review such an order or such questions of law or fact."

A district court in the District of Connecticut reached the opposite conclusion under similar circumstances. In Achbani v. Roman , the plaintiff sought a stay of removal, claiming that "he has the right to be free from detention and removal during the pendency of his application for a provisional unlawful presence waiver and the filing of form I-601a." 2017 WL 4227649, at *4 (D. Conn. Sept. 22, 2017). Reasoning that the plaintiff was "claim[ing] a right to remain in the U.S.," the court held that the court lacked "jurisdiction under the reasoning of Delgado ." Id. at *5. Respectfully, the Court is not persuaded by Achbani ; in the Court's view, Petitioner here does not claim a right to remain in the United States.

Provisional Unlawful Presence Waivers, https://www.uscis.gov/family/family-us-citizens/provisional-unlawful-presence-waivers (last visited Jul. 31, 2018).

Petitioner is currently undergoing the first of the three-step process. Petitioner's wife filed the Form I-130 in February 2018, which is currently under review. On July 24, 2018, Petitioner was summoned for an interview on August 21, 2018.